# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-509

**JOHNNY LEROY COBB, ET AL.**

**VERSUS**

**DELTA EXPORTS, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 97-3701
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Jere Jay Bice**
**J. Rock Palermo, III**
**Bice & Palermo, L.L.C.**
**Post Office Box 2125**
**Lake Charles, LA   70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Johnny Leroy Cobb**
     **Margaret C. Cobb**


**J. Konrad Jackson**
**Jackson Law Firm**
**825 Baronne Street**
**New Orleans, LA   70113**
**(504) 525-5090**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Johnny Leroy Cobb**
     **Margaret C. Cobb**

**Albert D. Giraud**
**Ginger Kaye DeForest**
**Ungarino & Eckert, L.L.C.**
**3909 Plaza Tower Drive**
**Baton Rouge, LA   70816**
**(225) 292-2000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Waste Management, Inc.**
    **Penn-America Ins. Co.**
    **Delta Exports, Inc.**

**Russell J. Stutes, Jr.**
**Scofield, Gerard, Veron, Singletary & Pohorelsky**
**Post Office Drawer 3028**
**Lake Charles, LA   70602**
**(337) 433-0022**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Linda Massey**
    **Greg Massey**

**Randall C. Mulcahy**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, LLP**
**Post Office Box 2900**
**Lake Charles, LA   70602**
**(337) 436-9491**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **State Farm Mutual Auto Insurance Company**

AMY, Judge.

The plaintiff alleges injury as a result of an accident between his vehicle and a front-end loader engaged in removing debris related to a 1997 ice storm in Lake Charles. A jury found in favor of the plaintiff, apportioning fault between the operator of the front-end loader, a contractor for whom the driver was found to be a borrowed employee, and the primary contractor performing the work for the City of Lake Charles. Damages totaling $2,267,483.71 were awarded. The defendants appeal. For the following reasons, we affirm.

**Factual and Procedural Background**

Waste Management of Louisiana, LLC entered into a contract with the City of Lake Charles to remove debris associated with a January 1997 ice storm. Because Waste Management did not have the necessary employees and equipment, it engaged Delta Exports, Inc. to perform the required work. Delta Exports then engaged Jack Gibson d/b/a J&P Logging to undertake the clean-up.

The accident at issue occurred on February 7, 1997, as the process was underway. Johnny Leroy Cobb, the plaintiff, alleges that he was traveling to a business appointment via Louie Street and saw a crew removing debris on the street. He denies seeing barricades or flagmen deterring his passage on the road. Mr. Cobb alleges that the accident occurred when he tried to pass the work crew's front-end loader. He contends that the loader, driven by James Wright of J&P Logging, backed into his car. He explained that he became nauseated and felt that he was in "shock" immediately after the accident, but that the pain increased over the subsequent weekend.

Mr. Cobb reported to his physician on the Monday following the accident and began a continuous course of treatment for back and neck complaints. He eventually

underwent several surgeries, including a lumbar fusion and a cervical fusion. Mr. Cobb maintains that he had to quit working within a few days of the accident and has been unable to return. He contends that he continues to experience pain and that, in addition to being unable to work, his daily activities have been curtailed.

Mr. Cobb filed suit, naming as defendants the City of Lake Charles, Waste Management, Delta Exports, Jack Gibson d/b/a J&P Logging, and the driver of the front-end loader, James Wright. Delta Exports' insurer, Penn-America Insurance Company was also named as a defendant. Summary judgments were originally entered in favor of the City of Lake Charles, Waste Management, and Delta Exports, but were reversed on appeal to this court. *See Cobb v. Delta Imports, Inc.*, 03-33 (La.App. 3 Cir. 6/4/03), 847 So.2d 739, *writs denied*, 03-1906 (La. 10/31/03), 857 So.2d 483, 03-1936 (La. 10/31/03), 857 So.2d 485.

After the matter proceeded to trial, a jury found that Mr. Wright, Delta Exports, and Waste Management were at fault in causing the accident. The plaintiff, Jack Gibson d/b/a J&P Logging, and the City of Lake Charles were found not to be at fault. Mr. Wright was also found to be the borrowed employee of Delta Exports. The jury apportioned 25% of the fault to Mr. Wright, 25% to Delta Exports, and 50% to Waste Management.

The jury awarded the following damages:

| | |
|---|---|
| Past Medical Expenses | $233,813.71 |
| Future Medical Expenses | $110,000.00 |
| Past Loss of Earnings | $668,785.00 |
| Future Loss of Earnings/<br>Loss of Earning Capacity | $754,385.00 |

Physical Pain and Suffering,
Past and Future and
Physical Disability          $500,000.00

Property Damage          $500.00

Delta Exports, Penn-America, and Waste Management (hereinafter "the defendants") filed a Motion for Judgment Notwithstanding the Verdict and for Conditional New Trial, or, Alternatively, for New Trial. The motion was denied by the trial court.

The defendants appeal, assigning the following as error:

1. The Trial Judge Erred in Ordering Factual Presumptions (Adverse to the Remaining Defendants) Read to the Jury Due to Conduct of a Voluntarily Dismissed Party;

2. The jury abused its discretion in finding James Wright was a borrowed employee of Delta;

3. The jury abused its discretion in assessing Waste Management or Delta with any liability for the accident;

4. The jury abused its discretion in awarding unreasonably high damages;

5. The jury abused its discretion i[n] failing to apportion fault to plaintiff;

6. The judge abused his discretion in holding Penn-America solidarily liable with Delta and Mr. Wright pursuant to its policy limits, but not with Waste Management.

7. The trial judge abused his discretion in confirming a default judgment against [M]r. [W]right after trial.

**Discussion**

*Factual Presumptions*

After discovery requests and a motion to compel directed toward one-time-defendant Jack Gibson, d/b/a J&P Logging were not satisfied, the plaintiff requested that the trial court advise the jury of several presumptions regarding this failure to

3

comply with discovery requests. The plaintiff requested that the trial court "instruct the jury that because Mr. Gibson has not produced the following items that they should presume that such documents or things requested do not exist." The trial court ultimately advised the jury as follows:

> One: Jack Gibson, d/b/a J&P Logging, has produced no W-2s or cancelled checks or proof of withholding taxes for the members of his work crew, including James Wright.

> Two: Jack Gibson, d/b/a J&P Logging, has produced no insurance coverage for street debris recovery work.

> Three: Jack Gibson, d/b/a J&P Logging, has produced - - has not produced a safety policy or manual for Jack Gibson, d/b/a J&P Logging.

> Four: Jack Gibson, d/b/a J&P Logging, has not produced any evidence that his work crew was provided with any safety guidelines, policies, manuals or programs in preparation of this work on the city streets of Lake Charles.

The defendants contend that this information suggested to the jury that Jack Gibson, d/b/a J&P Logging was either uninsured or insolvent and, therefore, unduly prejudicial to the remaining defendants. The plaintiff asserts that the information was not suggestive of insolvency and, further, was relevant to his claim for negligent hiring, his claim that Waste Management and Jack Gibson, d/b/a J & P Logging did not have a contract, and the analysis of Waste Management's fulfillment of its contract. The plaintiff also contends that the information was related to the question of whether Mr. Wright was the borrowed servant of Delta Exports.[1]

---

[1] The plaintiff also points out that, insofar as the defendants contend that information unfairly referenced insolvency or insurance and was, therefore, unduly prejudicial, the trial court instructed the jury as follows prior to deliberation:

> The ability or inability of a party to pay - including whether or not that party had insurance - is irrelevant in determining that party's fault. In other words, whether or not a party did or did not have insurance should play no part in your determination of whether that party's actions caused or contributed to the accident in question.

4

We note that the presumption issue was first presented to a panel of this court on the defendants' application for writs during the course of the trial. Reviewing the trial court's decision to permit the court's instruction, this court ruled: "WRIT DENIED: We find no abuse of discretion in the ruling of the trial court." *Cobb v. Delta Exports, Inc.*, 04-483 (La.App. 3 Cir. 4/13/04). Pursuant to the law of the case doctrine, an appellate court typically will not reconsider its own rulings of law in the same case. *Trahan v. State ex rel. Dep't of Health and Hosp.,* 04-743 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245. Application of the doctrine avoids repetitive litigation of the same issue and promotes "essential fairness to the parties, and judicial efficiency." *Id.* at 1250. The doctrine is discretionary and is not applicable in the event that the prior decision "was palpably erroneous or its application would result in manifest injustice." *Id.*

Having considered the trial court's determination and the plaintiff's claims, we conclude that this court's decision to deny the writ was not palpably erroneous. Neither does the application of the law of the case doctrine result in manifest injustice. Accordingly, we do not reconsider the prior decision of this court.

*Borrowed Employee Status*

The defendants also question the jury's determination that Mr. Wright was the borrowed employee of Delta Exports. They contend that the evidence demonstrated that Jack Gibson, d/b/a J&P Logging was the employer, as he provided Mr. Wright's compensation and retained the ability to terminate his employment. Thus, the defendants contend, the plaintiff failed to carry his burden of proving that Mr. Wright was a borrowed employee.

5

In *Morgan v. ABC Manufacturer,* 97-956 (La. 5/1/98), 710 So.2d 1077, the Louisiana Supreme Court noted that jurisprudential interpretation of La.Civ.Code art. 2320[2] has consistently provided for an employer's vicarious liability for the torts of its employees. This interpretation is reflected in La.R.S. 9:3921.[3] *Id.* The courts have further recognized that, in certain circumstances, an employee's immediate or "general" employer may relinquish control over an employee to a special employer to such a degree that this special employer is also liable for the torts of the employee. *Id.*

In considering whether a borrowed servant relationship exists, the courts consider several factors, including: 1) Which employer has control over the employee and his or her work, beyond the mere suggestion of details or cooperation; 2) Which employer's work is being performed; 3) Whether an agreement existed between the general employer and the borrowing employer; 4) Whether the employee acquiesced in the situation; 5) Whether the general employee terminated his relationship with the employee; 6) Which employer furnished the necessary tools and the place where the work was performed; 7) Whether the new work situation was over

---

[2] Entitled "Acts of Servants, students or apprentices," La.Civ.Code art. 2320 provides:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.

> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

> The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses.*

[3] Louisiana Revised Statutes 9:3921 provides, in part: "[E]very master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed."

6

a considerable period of time; 8) Which employer had the right to terminate the employee; and 9) Which employer had the obligation to pay the employee's wages. *Barnett v. Meridian Res. & Exploration*, 01-1114 (La.App. 3 Cir. 2/6/02), 815 So.2d 1016, (quoting, *Vaughn v. BFI Waste Sys. of North America, Inc.*, 01-1105 (La.App. 4 Cir. 7/25/01), 793 So.2d 410), *writs denied*, 02-630 (La. 5/3/02), 815 So.2d 105, 02-651 (La. 5/3/02), 815 So.2d 106, 02-676 (La. 5/3/02), 815 So.2d 109. While at one time the central inquiry in a borrowed servant determination focused upon the right of control factor, the supreme court has remarked that the "modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of 'enterprise liability.'" *Morgan*, 710 So.2d at 1083.

Although the determination as to the existence of a borrowed servant relationship has been viewed as a legal one, the determination is necessarily one that is fact bound. *Barnett*, 815 So.2d 1016. Having reviewed the record, we do not find reversible error in the jury's determination that Mr. Wright was a borrowed employee of Delta Exports.

Although not all of the above factors are present in this matter, sufficient evidence was presented by the plaintiff to support the jury's determination that Mr. Wright was a borrowed employee of Delta Exports. First, the jury was clearly able to find that the work being pursued was that of Delta Exports, a company that performed storm debris removal. Further, the equipment operated by Mr. Wright on the day of the accident, the front-end loader, was leased by Delta Exports. Testimony indicated that Delta Exports typically leased such equipment for its subcontractors and the rental fee was then factored into the subcontractor's invoices to Delta Exports.

The jury was further permitted to take into consideration that the relationship between Delta Exports and Jack Gibson d/b/a J&P Logging appears to have been based only on an oral agreement. Testimony indicated that Jack Gibson refused to sign the contract presented by Delta Exports due to questions regarding the compensation rate. As for control, the jury was aware that Mr. Gibson himself was not in the state at the time of the accident in question, instead leaving supervision to his foreman, Jean Paul Chappel. Mr. Gibson responded affirmatively when asked whether he took orders from Delta Exports. He also explained that any problems that arose were reported to Delta Exports.

Finally, the jury could have concluded that the seeming closeness of the businesses' financial arrangements were important in the borrowed employee analysis. Although Mr. Wright's salary was apparently paid by Mr. Gibson, Delta Exports provided cash advances to those employees of its subcontractors who sought assistance during their stay in Lake Charles. Further, the motel rooms in which the J&P Logging crew stayed while in Lake Charles were among those reserved by Delta Exports. Also, the jury was aware that Mr. Wright had an earlier history with Delta Exports, having worked directly for the company on an earlier storm debris job in North Carolina. According to Jeanne Gibson, who handled the paperwork for Delta Exports' subcontractors, the subcontractors on the Lake Charles job would arrive at her office most nights with invoices and load tickets for processing. In reviewing invoices during her deposition, she explained that some of the J&P Logging invoices were completed on Delta Exports forms, some even in her handwriting.

We conclude that the evidence was sufficient for the jury to make inferences in favor of the plaintiff with regard to borrowed servant status. We do not reverse that determination on review.

*Fault*

The jury apportioned 25% of the fault for the accident to Mr. Wright, 25% of the fault to Delta Exports, and 50% to Waste Management. The plaintiff was not found to be at fault. Although the actual apportionment is not addressed on appeal, the defendants question the findings as to fault in two assignments of error. First, the defendants question the determination that Delta Exports and Waste Management were at fault. In addition to their assertion that Mr. Wright was not the borrowed servant of Delta Exports, they contend that there was insufficient evidence of Waste Management's independent negligence to warrant inclusion in the apportionment of fault. The defendants further question the determination that the plaintiff was without fault in light of his testimony that he attempted to pass the work scene despite his knowledge that work was in progress. They contend that he could have entirely avoided the situation by turning around and traveling on a different street.

The plaintiff's theory of recovery against the defendants was one of negligence, as was the defendants' claim of comparative fault on the part of the plaintiff. Louisiana Civil Code Article 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The duty/risk analysis assists in the determination as to "fault" and requires the establishment of the following elements:

> (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-

in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) whether the plaintiff was damaged (the damages element).

*Benjamin v. Housing Auth. of New Orleans*, 04-1058, p. 6 (La. 12/1/04), 893 So.2d 1, 5, (citing, *Perkins v. Entergy Corp.*, 00-1372 (La. 3/23/01), 782 So.2d 606). A fact finder's factual determinations made during the course of the duty/risk analysis may not be set aside absent manifest error or unless the findings are clearly wrong. *Syrie v. Schilhab*, 96-1027 (La. 5/20/97), 693 So.2d 1173. Our review of the record reveals no such error in the jury's determinations as to fault.

Given the evidence presented, the jury was free to conclude that the accident in question was caused in some measure by the lack of traffic control at the worksite. Although differing testimony regarding the presence, or lack thereof, of barricades and flagmen was presented, the jury was able to conclude that any traffic control present was insufficient. Furthermore, the entity responsible for traffic control was less than clear.

A Waste Management official testified that the company did not delegate the responsibility for traffic control. He also explained that, to his knowledge, Waste Management did not train Delta Exports' workers as to traffic control, barricading, or the proper use of flagmen. Finally, the Waste Management official explained that he did not know whether Waste Management ascertained the extent of Delta Exports' capabilities.

With regard to the finding of fault on the part of Delta Exports, we have above affirmed the determination that Mr. Wright was working as Delta Exports' borrowed employee. Accordingly, we find no error in the determination that Delta Exports was

vicariously liable for his actions/inactions while in pursuit of Delta Exports' work. *See Morgan*, 710 So.2d 1077.

Finally, the defendants sought a finding of comparative fault on the part of Mr. Cobb. In addition to their assertion that the worksite was properly controlled by the use of barricades and flagmen, they contend that Mr. Cobb was aware of the heavy equipment at work on the street and yet he approached the scene and attempted to pass. We note that the jury was free to disregard testimony indicating that barricades and flagmen were in use, particularly in light of positive testimony that no such safeguards existed. Furthermore, the jury was able to listen to each party's version of events as to Mr. Cobb's passing maneuver and as to the movements of Mr. Wright's front-end loader, and conclude that Mr. Cobb was not negligent in his attempts to pass the scene. Our review of the record indicates no manifest error in the jury's determinations in this regard.

These arguments regarding fault lack merit.

*Damages*

The defendants next assert that the jury abused its discretion in awarding unreasonably high damages. We consider each of the awards in turn.

Medical Expenses

The defendants question the $233,813.71 awarded in past medical expenses and the $110,000.00 awarded for future medical expenses. The defendants point out that the plaintiff had previously undergone neck and back surgery. They also argue that some of his ongoing complaints were unrelated to this accident.

As noted by the supreme court, an award for future medical care must be established with a degree of certainty. *Duncan v. Kansas Southern Railway Co.*, 00-

11

66 (La. 10/30/00), 773 So.2d 670. On appellate review, a fact finder's determination as to quantum is owed great deference. *Trunk v. Med. Center of Louisiana*, 04-181 (La. 10/19/04), 885 So.2d 534.

With regard to past medical expenses, the parties stipulated as to the amount of incurred medical expenses, $233,813.71, leaving the question of causation to the jury. The record supports the determination that the entirety of the stipulated figure was necessitated by the accident. Although the plaintiff had previous neck and back complaints, even earlier neck and back surgeries, Mr. Cobb and his neurosurgeon indicated that his earlier surgeries were successful and that he was able to function well until the time of the accident. The jury heard Mr. Cobb explain that he would occasionally have pain after his earlier surgeries, but that it would resolve within a few days and that he was always able to work and participate in recreational activities. He testified that his pain substantially changed following the accident. Furthermore, although the defendants assert that the figure stipulated to included expenses associated with carpal tunnel syndrome and a rotator cuff injury that were unrelated to the accident, the defendants failed to present testimony as to what those costs were and in what way they should have been deducted from the stipulated figure.[4] Instead, the defendants argue broadly on review that the past medical expenses should be reduced to half of that awarded by the jury, $116,907.00. We do not find that such a reduction is warranted given the evidence presented.

With regard to future medical expenses, here too the record supports the jury's award of $110,000.00. Dr. Mayes opined that Mr. Cobb suffers from a chronic pain

---

[4] In fact, Dr. Paul Mayes, a physical medicine and rehabilitation practitioner, specifically explained that he did not know whether the costs associated with treatment for carpal tunnel syndrome and the rotator cuff syndrome were included in the schedule of costs provided to the jury. He further explained that any costs associated with his treatment of those issues were minimal.

12

problem that will require pain management for the remainder of his life. Dr. Mayes testified as to the need for physical therapy and occasional interventional pain procedures. Dr. Mayes referenced Mr. Cobb's immediate past expenses, finding the type of care rendered reflective of what could be anticipated in the future. Based upon the evidence presented, we do not find that the award made for future medical expenses requires adjustment.

Lost Wages

The jury awarded $754,385.00 for future loss of earnings. This figure reflects testimony of the plaintiff's experts indicating that, if Mr. Cobb could return to sedentary employment, he could earn an hourly rate of ten dollars. The estimated earnings were compared with Mr. Cobb's earlier position and the fact this earlier position included a benefits package and the prospect of an annual three percent merit raise.[5]

The jury was aware of other estimates as to Mr. Cobb's future employment prospects, including the defendants' contention that Mr. Cobb could earn substantially more than the earnings estimated by the plaintiff's experts. They chose to accept the plaintiff's evidence indicating that Mr. Cobb could earn approximately ten dollars per hour if returned to a sedentary position. The jury's decision to credit the plaintiff's evidence is supported by the record.

With regard to the future loss of earnings inclusion of the three percent merit increase, the jury was aware that Mr. Cobb's job responsibilities at his company were assumed by his supervisor after he left. However, the jury was free to conclude that

_____

[5] The plaintiff's supervisor from his previous employer testified that Mr. Cobb had received the merit increase while employed and that he would expect that, based on past performance, Mr. Cobb would have continued to receive the increases.

the earnings testified to were evidence of Mr. Cobb's earning potential and were reflective of what he would have been able to continue to earn if not for the accident. Again, the plaintiff's evidence was such that it provided a reasonable basis for the jury's awards as to earnings. This argument lacks merit.

General Damages

The jury awarded $500,000.00 in general damages, a figure the defendants contend is excessive. Referencing figures reported in the jurisprudence, the defendants contend that $250,000.00 is the highest reasonable award in this case.

An award of general damages is reviewed on appeal under the abuse of discretion standard of review. *Cone v. Nat'l Emergency Serv., Inc.*, 99-934 (La. 10/29/99), 747 So.2d 1085. Only if there is such an abuse of discretion does the reviewing court consider prior awards in its consideration of the highest or lowest amount that was within the fact finder's discretion. *Id.*

Our review reveals no abuse of discretion in the jury's $500,000.00 award for general damages. The record supports a determination that the collision with the front-end loader resulted in the need for three surgeries, including both a lumber fusion and cervical fusion. Mr. Cobb explained that, although he had occasional pain prior to the accident, his condition significantly worsened afterward resulting in the inability to return to employment. Although the jury found that Mr. Cobb would be able to return to some type of sedentary position, it also determined that his ability to work was greatly diminished. His physicians were skeptical about a permanent return to work. His condition is described as a permanent one which will require future pain management. Mr. Cobb testified at trial that he continues to have a significant amount of back pain, that the side of his left foot is "dead," as are three toes on each

14

of his feet, and that his neck remains "stiff." He takes pain medication on a daily basis.

Mr. Cobb explained that he can no longer participate in the type of activities he once enjoyed and that attempts to fish and golf had proven unsuccessful. Although Mr. Cobb has traveled on occasion since his accident, he explained that visits to his children are now more time consuming given his inability to travel for long periods. Mr. Cobb also explained that he walks with a cane sixty percent of the time when outside of his home due to his concerns over falling.

Given the evidence presented, we do not find that the jury abused its discretion in awarding $500,000.00 in general damages.

*Coverage of Penn-America Policy*

Subsequent to the jury's verdict, the trial court addressed the parties' concerns as to whether the Penn-America policy issued to Delta Exports provided insurance coverage for Waste Management. The trial court concluded that the policy did not include Waste Management as an insured. The defendants question this determination on review, asserting that the trial court should have found Penn-America solidarily liable with Waste Management.

The portion of the Penn-America policy issued to Delta Exports that is in controversy in this assignment provides as follows:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

15

insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . .

. . . .

**2.      Exclusions.**
This insurance does not apply to:

 . . . .

**b.      Contractual Liability**

"Bodily injury: or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)      Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2)      That the insured would have in the absence of the contract or agreement.

The defendants contend that the above exclusion does not apply to the Waste Management situation due to the following definition of "Insured Contract" contained elsewhere in the policy:

8.      "Insured contract" means:

. . . .

f.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The trial court concluded that the Penn-America policy was not proven to include Waste Management.  We find no error in this determination given the

16

vagueness of the Delta Exports-Waste Management relationship. The relationship was not shown to have been memorialized in a written contract. The details of an oral contract were further vague, particularly insofar as the defendants attempt to prove that Delta Exports assumed the tort liability for the actions on the scene. Again, the evidence was not sufficiently clear so as to require the trial court to find coverage under the policy. Accordingly, the judgment does not require amendment.

This assignment lacks merit.

*Default Judgment*

Subsequent to the verdict in this matter, the plaintiffs moved to confirm a previously entered default judgment obtained against Mr. Wright. The defendants question this confirmation on appeal, asserting that it was inappropriate for the trial court to include Mr. Wright on the final judgment as he had not filed an answer. The plaintiffs point out that Mr. Wright failed to make an appearance of record during the history of the case. *See* La.Code Civ.P. arts. 1701(A)[6] and 1702(A).[7]

---

[6] Article 1701(A) provides, in part, that:

> If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes.

[7] Article 1702(A) provides, in part, that:

> A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default. When a judgment of default has been entered against a party that is in default *after having made an appearance of record in the case*, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.

(Emphasis added.)

Given the evidence presented in the record, the admitted absence of an answer filed by Mr. Wright, and the record's inclusion of the preliminary default entered against Mr. Wright, we find no error in the judgment rendered by the trial court.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed against the appellants, Delta Exports, Inc., Penn-America Insurance Company, and Waste Management of Louisiana, LLC.

**AFFIRMED.**