# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 26, 2010

Lyle W. Cayce
Clerk

No. 09-30077

LINEY RYES,

Plaintiff-Appellee

v.

B C S INSURANCE CO,

Defendant-Appellant

SCOUT TRANSPORTATION SERVICES INC; PHILLIP BOUDREAUX;
HOME STATE COUNTY MUTUAL INSURANCE COMPANY,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:07-CV-1209

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:[*]

In this interlocutory appeal certified by the district court pursuant to 28 U.S.C. § 1292, the issue is whether Plaintiff-Appellee Liney Ryes is an independent contractor of Defendant-Appellee Scout Transportation Services,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30077

Inc., or whether he is an independent contractor of Defendant-Appellee Phillip Boudreaux. The answer affects Ryes's eligibility for benefits under an accident and disability policy issued by Defendant-Appellant BCS Insurance Company. Applying Louisiana law, the district court held that Ryes was an independent contractor of both Scout and Boudreaux.[1] We AFFIRM.

There is no dispute that Boudreaux agreed in writing as an independent contractor to lease a truck to Scout. That contract also provided that Boudreaux would provide drivers. Boudreaux in turn orally agreed with Ryes that Ryes would drive the truck for Scout and would be paid a percentage of earnings that Scout paid to Boudreaux. BCS contends that the agreement between Boudreaux and Scout establishes that Ryes was an independent contractor of Boudreaux only, and that Ryes could not at the same time be an independent contractor of Scout. But we do not view the contract between Scout and Boudreaux to control the relationship between Scout and Ryes. After reviewing the relevant documents in the record and the deposition testimony of the parties, and considering the somewhat unusual tripartite relationship present here, we conclude that Ryes was an independent contractor of both Scout and Boudreaux.

The independent contractor employment status is determined on a case by case basis in light of the entire record. *See Tate v. Progressive Sec. Ins. Co.*, 4 So. 3d 915, 916 (La. Ct. App. 2009); *Kibodeaux v. Progressive Ins. Co.*, 4 So. 3d 222, 225–26 (La. Ct. App. 2009). Courts will consider whether:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the

---

[1] Scout Transportation Services, Inc. no longer operates and has no assets after discharge from Chapter 7 bankruptcy. That has no effect on this appeal because the date of the injury of Ryes and his relationship to Scout at that time is the issue here.

No. 09-30077

services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Kibodeaux,* 4 So. 3d at 225–26; *see also Hickman v. S. Pac. Transp. Co.*, 262 So. 2d 385, 390–91 (La. 1972).

The record here shows that in addition to his oral agreement with Boudreaux, Ryes entered into an agreement to drive for Scout and represent Scout in the hauling and delivery of freight. Ryes filled out an extensive employment application packet with Scout in order to comply with Scout's requirements, underwent a physical examination paid for by Scout, and also executed a Driver Contractual Service Agreement with Scout. The Service Agreement, which referred to Ryes as a "contract driver," established that Ryes was not an *employee* of Scout, but the agreement was consistent with Ryes being an *independent contractor*. It provided that Ryes would perform certain duties and that Scout would reimburse him for certain expenses, that Ryes was responsible for his own taxes, that Scout would pay Boudreaux at fixed intervals, and that Ryes would then look to Boudreaux for his compensation. Although Scout did not compensate Ryes directly, and Boudreaux issued him a Form 1099, this was contemplated by the parties in the Service Agreement. Ryes explained that if Scout failed to pay Boudreaux he would not be paid. Ryes exercised independent control over whether and how to deliver any particular load, and Scout did not exercise control over Ryes's methods of performing his duties. All this is consistent with Ryes and Boudreaux's testimony and the oral agreement between them, and with Ryes being an independent contractor of Scout.

The parties' testimony and conduct show that the parties viewed Ryes as a contractor of Scout. Scout's president testified that Scout was ultimately responsible for the hiring and firing of drivers for its leased trucks. He

3

No. 09-30077

explained that although Boudreaux could also fire Ryes, Scout could continue to use Ryes as a driver on another truck if that happened. Boudreaux testified that Ryes was not his employee and that all necessary employment forms were done through Scout. Ryes testified that his oral agreement with Boudreaux was a deal that "would let [him] lease the truck on with Scout." When Scout applied for the BCS accident and disability policy, it listed Ryes by name on the self-administered premium statement as a covered driver. It also checked off a box asking whether drivers to be covered were independent contractors. The premium forms show that at the time Scout was applying for coverage it viewed Ryes as an independent contractor for purposes of the policy.

In the words of Scout's president, the relationship of Scout, Boudreaux, and Ryes was "triangular." Under this relationship, we are satisfied that Ryes had agreements with both Boudreaux and Scout that met the independent contractor test under applicable state law, and that the district court did not err.

BCS also argues that because the policy is an ERISA plan, the denial of benefits to Ryes was entitled to review under an abuse of discretion standard but that there is no showing that the district court applied this standard to the plan administrator's decision. We decline to address this issue. This is an interlocutory appeal certified by the district court on a controlling question of law under § 1292. BCS's argument that the district court failed to apply an abuse of discretion standard is raised for the first time on appeal. It is settled that "[a]ppellants 'cannot attack summary judgment on appeal by raising distinct issues that were not before the district court.'" *Colony Creek, Ltd. v. Resolution Trust Corp.*, 941 F.2d 1323, 1326 (5th Cir. 1991) (citation omitted); *see also Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999) (a party generally may not raise a claim for the first time in its appellate brief). Accordingly, we decline to review this issue.

AFFIRMED.

4

No. 09-30077

JACQUES L. WIENER, JR., Circuit Judge, dissenting:

Like the unknowable sound of one hand clapping, the legal conclusion that the panel majority embraces—one truck driver serving as the independent contractor of both the lessor and the lessee of one truck while performing the one, indivisible act of driving that truck from Point A to Point B—is simply beyond my powers of comprehension. All the parties are now in agreement that (1) Ryes (the truck driver) never was the *employee* of either the lessee of the truck (Scout) or the lessor (Boudreaux), and (2) Ryes was at all times Boudreaux's independent contractor, whose truck-driving services Boudreaux furnished to Scout pursuant to their truck-and-driver lease agreement. Accordingly, I cannot imagine any way that, as a matter of law, we can also classify Ryes as the independent contractor of Scout, since, as Boudreaux's independent contractor, Ryes was performing precisely the same truck driving function at precisely the  same time.

Regrettably, this ERISA[1] case got badly wrapped around the axle before it came to this panel certified under 28 U.S.C. 1292(b) as a single, up-or-down interlocutory appeal of the district court's determination of Ryes's legal status *vis à vis* both Scout and Boudreaux. Now, following as it does the severance of all other issues and claims and their remand to state court, only that one ERISA issue remains before us on appeal, providing both federal jurisdiction and the framework within which we must rule on the questionably relevant issue of the contractual relationships among Ryes, Boudreaux, and Scout. As I have been unable to convince my learned colleagues of the panel majority that the over-arching  principle of ERISA deference owed to the independent plan administrator of Scout's occupational disability "fringe benefit" plan was duly

---

[1] Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 891, 29 U.S.C. § 1001 et seq.

raised in the district court, was carried with the 28 U.S.C. § 1292(b) certification, and is—or at least should be—determinative of the instant appeal, I must respectfully dissent.

## I.    Violation of ERISA preemption for employee benefit plans

The record makes plain that over the course of this dispute, Scout and Boudreaux offered inconsistent and ever-changing evidence and testimony regarding the factual and legal relationships among Ryes, Scout, and Boudreaux.  Initially, BCS's independent plan administrator, North American Benefits Co., determined that Ryes was not eligible to participate in Scout's occupational-disability ERISA plan because he was a sub-contractor of Boudreaux, who in turn was Scout's independent contractor.  This is because all sub-contractors of Scout's independent contractors were expressly excluded from coverage.  Then, in an effort to evade the plan administrator's determination that Ryes was a sub-contractor and thus ineligible for disability benefits, Scout came up with (1) an affidavit signed by Boudreaux attesting that Ryes was his *employee* (!) and (2) a Form-W4, allegedly signed by Ryes, purporting to support Scout's contention that Ryes was Boudreaux's *employee* and thus eligible, as the employee of Scout's independent contractor, for benefits under Scout's plan.  When later confronted with this preposterous position, however, Boudreaux, in his deposition testimony, distanced himself from the affidavit, volunteering that he would automatically sign anything Scout put in front of him.  Consistent with that admitted falsehood, the Form W-4 was proved to be a forgery when Ryes himself averred under oath in deposition testimony that the signature on the W-4 was not his.

Neither my colleagues of the panel majority nor any of the parties have questioned that the BCS policy is Scout's ERISA employee benefit plan.  Yet BCS and its independent plan administrator, North American Benefits Co., have never been afforded the opportunity to determine Ryes's eligibility for "fringe

benefits," one way or another, on the basis of the complete and accurate record, including the opportunity to reject as incredible the inconsistent and irreconcilably mendacious testimony of Scout's president.[2]  Moreover, the plan administrator's initial determination that Ryes was not eligible under the employee benefit policy has never been judicially reviewed under the "deferential standard of review appropriate when a trustee exercises discretionary powers."[3] Inasmuch as our affirming the district court's determination skips over the statutorily mandated administrative process, the panel majority effectively puts the cart before the horse when it upholds the district court's grant of summary judgment with respect to Ryes's contractual status *vis à vis* both Scout and Boudreaux.

## II.    The fallacy of "dual" independent contractor status

Turning to the merits, the district court's determination—affirmed here by the panel majority—that as a matter of law Ryes was somehow simultaneously the independent contractor of both Boudreaux *and* Scout for the single purpose of performing the *very same* work, at the *very same* time, countenances a legal impossibility under the now-undisputed facts of this case.[4]

---

[2]  29 U.S.C. § 1133; *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.,* 215 F.3d 475, 479 n.4 (5th Cir. 2000) (noting among the purposes of exhaustion "upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*.") (internal marks and citations omitted).

[3]  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948 (1989); *accord Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2347-48 (U.S. 2008).

[4]  I acknowledge, of course, that any of us could conjure up different hypothetical facts under which one person could indeed serve as the independent contractor of two other contracting parties, but never when, as here, the person in question performs a single function at a single time.  Similarly, a contract reflecting a "borrowed servant" arrangement between Scout and Boudreaux with respect Ryes's services, or one providing that Ryes was the legal employee of Scout for one purpose and the legal employee of Boudreaux for another, would be possible, but not in the light of the unequivocal documentation in this case, which

No. 09-30077

No party to this dispute contends before this panel that Ryes was anything other than an independent contractor, *i.e.*, none now contends that he ever was an employee of either Boudreaux or Scout, alternative positions that Scout tried to advance before the district court. Before this suit began, however, Scout appears to have contended that Ryes was Boudreaux's employee and thus covered by BCS as the employee of an independent contractor of Scout. But, BCS denied Ryes's application for benefits because it was furnished with a Form 1099—*not* a Form W-2—that Boudreaux (not Scout) had issued to Ryes, reflecting that Ryes was Boudreaux's independent contractor (not his employee) and thus a sub-contractor (not an employee) of Scout's independent contractor. As such, Ryes was indisputably excluded from coverage under Scout's employee benefit policy with BCS.

This realization is apparently what prompted Scout's disingenuous attempts to re-classify Ryes as Boudreaux's employee by producing the forged Form W-4 along with Boudreaux's later-disavowed affidavit. That was a transparent attempt to ensure that Ryes's disability claims against Scout would be covered under Scout's accident and disability plan, which was insured by the BCS policy. When that too failed because the Form W-4 and the Boudreaux affidavit were discredited, Scout tried yet another artful dodge, this time asserting that Ryes was somehow both Boudreaux's independent contractor *and* Scout's independent contractor, albeit for the purpose of performing the self-same, singular act of driving the truck that Boudreaux leased to Scout on terms that indivisibly obligated Boudreaux to furnish not just the truck but its driver too. This third try by Scout proved to be the charm, as both the district court and the panel majority accepted it.

---

repeatedly eschews any such arrangement here. *See, e.g., Cobb v. Delta Exports, Inc.*, 918 So.2d 1080 (La. App. 3rd Cir. 2005); La. Civ. Code 2320.

8

No. 09-30077

Although Scout's machinations are not—or at least should not be—dispositive, they do expose the flaw in the panel majority's narrow focus on Scout's lopsided contract of adhesion with Ryes. Despite its ambiguously misleading title, "Driver Contractual Service Agreement," Scout's printed-form document goes to great lengths to negate any employee or contractor relationship whatsoever between Scout and Ryes, even to the point of eschewing any possibility that Scout could ever owe any compensation, insurance coverage, or other consideration whatsoever to Ryes. To me, this alone is enough to make it legally impossible for Ryes to have been Scout's independent contractor. Who ever heard of a wholly *un*compensated contractor or a commutative contract devoid of any consideration whatsoever to one of the parties?

That so-called "Service Agreement" between Scout and Ryes stipulates that "[Scout] shall pay [Ryes] no salary, wages, or commissions." Lest this leave Ryes with any illusions, that instrument adds the belt-and-suspenders declaration  that "CONTRACT DRIVER is not an employee of [Scout]." It then goes on to expressly negate contractor status with Scout by declaring of Ryes: **"At best**, he/she may be considered an employee of an OWNER-OPERATOR [Boudreaux] **who is engaged in a contractual agreement** with [Scout] **to provide certain equipment**, services, **and personnel** [driver of the leased truck] to fulfill the covenants outlined in the Independent Contractor Agreement." (emphasis added).  Further driving this tack with the proverbial sledgehammer, Scout's form instrument reiterates that "[Ryes] agrees that he/she is not an employee of [Scout] for any purpose whatsoever," adding that Ryes "agrees that he . . . shall be compensated by [Boudreaux]. . . ."

Most importantly for today's consideration of Ryes's eligibility for benefits under Scout's ERISA disability policy, Scout's printed "Service Agreement" declares: "As a CONTRACT DRIVER **you** [Ryes] **are not eligible to participate in any of** [Scout's] **fringe benefit programs**" (emphasis added).

9

No. 09-30077

And none disputes (nor could they) that the BCS disability policy funds a Scout ERISA "fringe benefit" within the clear intendment of that instrument—the very denied benefit that the panel majority now extends to Ryes—at the expense of BCS, not Scout.

But, that's not all. Not only does Scout's misleadingly labeled "Service Agreement" emphatically negate any possibility that Ryes might conceivably be deemed either an "employee" or an "independent contractor" *of Scout*, so as to entitle him to any "fringe benefit" such as disability coverage; by its own terms, Scout's form declares itself to be ancillary to the truck-and-driver lease agreement between Scout and Boudreaux. The Scout-Ryes agreement refers explicitly to the duty owed to Scout by Boudreaux to provide "personnel"—meaning drivers such as Ryes—and expressly disclaims any conceivable responsibility of Scout for compensation, fringe benefits (such as the occupational accident and disability policy at issue here), or any other consideration owed to or liability for such a driver. Again, the Scout-Ryes document specifically instructs Ryes to look only to the "owner-operator"—Boudreaux—to resolve any such issues. Unsurprisingly then, it was Boudreaux, not Scout, who issued the Form 1099 to Ryes, correctly identifying him as an independent contractor—not of Scout but of Boudreaux—and thus Scout's independent contractor's subcontractor, a category of persons expressly excluded from coverage in the BCS policy.

That "other" contract, the one between Scout and Boudreaux, accurately labeled "Independent Contractor Agreement," reinforces the conclusion that Ryes was the independent contractor of Boudreaux only, and thus the subcontractor of Scout's independent contractor, not Scout's own independent contractor. The Scout-Boudreaux truck-and-driver lease contract states that Boudreaux "agrees to lease to Scout . . . [the truck in question] **and furnish Department of Transportation qualified drivers.**" That Scout-Boudreaux

10

contract further specifies that "THE CARRIER [Scout] **shall not provide any insurance coverage of any kind** for THE CONTRATOR [sic] or THE CONTRACTOR'S Representatives, staff **or drivers**. . . . **This includes but** [sic] **not limited to** claim [sic] for wages, unemployment benefit, **industrial accident compensation or any on the job related compensation**." (emphasis added). How, then, I must ask rhetorically, can Scout possibly maintain that Ryes is covered by Scout's disability policy in the light of that express negation, articulated as it is in both the Scout-Ryes document *and* the Scout-Boudreaux contract? Yet that is precisely what the district court held and precisely what the panel majority holds today.

As the panel majority correctly notes, it is uncontested that (1) Ryes received his trucking assignments (but no detailed time-and-route instructions) from Scout as the lessee of Boudreaux's truck, and (2) prior to ever driving that leased truck, Scout had Ryes fill out an extensive driver-safety certification package, which entailed, *inter alia,* submitting to a physical examination paid for by Scout. It is also uncontested that Scout included Ryes's name—as well as Boudreaux's—among the names of several individuals listed in its annual premium statement for the BCS policy (conceivably entitling Scout to recover, at most, a portion of its premiums from BCS). Perhaps these facts, coupled with the conflicting documentary record and irreconcilable testimony, should have lead our panel to conclude that this case is not ripe for summary judgment. But, as the panel majority elected to address the merits instead of returning the issue to the plan administrator, I find inescapable the conclusion that together Ryes's markedly harsh contract of adhesion with Scout and Scout's extreme disclaimer in that contract, work to negate *any* employee or independent-contractor status, rights, or duties between Ryes and Scout. Only when faced with the potential out-of-pocket liability for Ryes's injuries did Scout squirm and wiggle and advance inconsistent statements in a desperate effort to have Ryes

11

re-classified as an independent contractor of *both* Scout *and* Boudreaux, so as to shoe-horn Ryes into eligibility for benefits under Scout's ERISA plan that BCS insured and North American Benefits Co. administered.

But, under the undisputed, credible facts of this case (as distinguished from the ever-shifting and inconsistent series of irreconcilable facts and legal classifications advanced by Scout), I can see no way that Ryes could have served as the independent contractor of both Scout and Boudreaux *at the very same time* while performing *the very same, single act*, *viz.*, the driving of the one leased truck. This is especially obvious in the light of the fact that Boudreaux was contractually bound to furnish Scout with a driver of that truck, and Boudreaux alone was contractually bound to Ryes (and to Scout!) to provide all compensation and all insurance coverage for that non-employee truck driver.

Scout made this bed; it should be made to lie in it.

These are the reasons why, despite my utmost respect for my colleagues of the panel majority, I am constrained to dissent.