SOMMERVILLE, J.
This is a personal injury suit where the amount of $5,660 is claimed for injuries to Mrs. Quayle, through the alleged fault and neglect of the defendant board. There was judgment in favor of the plaintiff for $2,500, and defendant has appealed.
The defendant filed a general denial, and pleaded contributory negligence on the part of plaintiff, and asked that the suit be dismissed.
The parties went to trial on the pleadings thus referred to. At a subsequent date the defendant filed an amended answer, different from the one originally filed, and it materially altered the substance of the defense. But no objection was made thereto in the trial court. It set up that the work under consideration was being done by independent contractors employed by the sewerage and water board, and that the said board was in consequence not liable to plaintiff for the damages alleged to have been sustained by her in her petition.
In this court defendant, on its brief, has added another defense, to the effect that it is acting as the agent of the city of New Orleans in the construction, operation, and maintenance of the sewerage and water system in the city, and that it is not liable in damages ex delicto resulting from its own acts; that the city is alone answerable therefor. As this argument is not based upon any part of the pleadings, it will not be further noticed.
[1] We shall first consider the special defense made in the supplemental answer. There it is alleged that the paving work being done whereon the accident occurred was being done by independent contractors, namely, La Couture & Berry; that the faulty covering of the work was done by one of the employés of said firm, for whose act this defendant was in no manner liable. The defendant called to the stand Mr. Eastwood as a witness. He is the official engineer of defendant board. I-Ie testified that the contract with the said contractors was for repairing sidewalks which had been torn up in the course of the constructive work by the defendant; that the work involved was what is called task work; that the contractors referred to were under the instructions of the inspector of the board in- so far as the character of the work was concerned, and that the inspector measured the work and saw that it was done properly. Mr. J.
N. Slemmer, the paving inspector of the board, defines task work to be as follows:
“This work is done by cards; in other words, the foreman tears up a piece of pavement, he works by a working card, and that is sent in to the office, and the clerks make out a paving card, classifying the kind of pavement, and that card is handed over to La Couture & Berry, and they would go down and measure them, and place the result on that paving card, which was turned into the office, turned back to me for remeasurement, and if I found the measure-ment to be short or over it would be acted on.”
Mr. Eastwood further testifies that La Couture & Berry were subject to discharge at a moment’s notice by the board; that the *29 inspector of the board remained on the work, and directed how it should be done; that, if the work was being done wrong, the inspector would command the contractors to do the work in another way. Mr. Bayhi, a witness for the defense, and an employé of La Couture & Berry, testified that the inspector for the board gave instructions daily. Mr. Berry, a witness for the plaintiff, testified to the same effect; and, further, that if a man was not doing right the inspector would order him off the work, and that he, Berry, could not have that man any more on the work. He testifies that this was the power lodged in the inspector. Mr. La Couture testified to the same effect; and in answer to the question:
“Did the inspector ever direct you to discharge a man? A. Yes; they have ordered me to turn them off. In fact, one man I knew they ordered me not to have on the works any more.”
A .consideration of the foregoing evidence convinces us that La Couture & Berry were not independent contractors; and that the defendant is responsible for the damages resulting from the act of its employés.
[2] The evidence shows: That the plaintiff, Mrs. Quayle, in walking from her doorstep, was compelled to step upon some boards laid temporarily over some new paving done that day. She placed her foot upon an old and defective door which had been placed over said pavement by the workmen engaged in the work. That her foot went through the door, and that she was thrown to the ground, and that her ankle bone was broken in two places, inflicting what is called a Potts’ fracture. The break was an internal malleolus fracture of the small bone, or what is called the tibia, and a fracture of the outer ankle bone, or external malleolus, or fibula. The ligament also was torn. The plaintiff suffered great pain, and the doctor was in attendance upon her for two months or more. He declared her well about three or four months after the accident. At the time of the trial, the physician testified that plaintiff had lost some of the motion in the ankle joint, and that she will always have a certain loss of motion, and a difficulty in motion due to the callous which is present. 1-Ie testified, further, that this disability would always remain. She was suffering with pain at the time of the trial, and the physician who was a witness testified that in his opinion this pain will be permanent. The plaintiff is a woman some 58 or 60 years of age, and that is why the physician was of the opinion that the trouble and pain would be permanent.
There were no witnesses to the accident examined on behalf of the defendant. We are convinced from the testimony of plaintiff and her witnesses that the accident happened without her fault or neglect, and that defendant board is entirely responsible therefor, and the damages resulting therefrom.
There is no error in the judgment appealed from, and it is affirmed.