## WASHINGTON v. SEWERAGE AND WATER BOARD OF NEW ORLEANS et al.*

### No. 16536.

Court of Appeal of Louisiana. Orleans.

April 4, 1938.

*Rehearing denied May 2, 1938; writ of certiorari denied May 30, 1938.

Gus A. Llambias, of New Orleans, for appellant Sewerage and Water Board.

Hugh. M. Wilkinson and Geo. M. Leppert, both of New Orleans, for appellee.

McCALEB, Judge.

Caledonia Washington, widow of William Washington, brings this suit in her own behalf and for the use and benefit of her seven minor children, for the recovery of compensation for the death of her husband who died as a result of injuries he received while working, as water boy, on a project sponsored by the Sewerage and Water Board of New Orleans for the construction of sewers.

The defense of the Sewerage and Water Board is (1) that the relationship of employer and employee did not exist between it and Washington; (2) that Washington was employed by the Emergency Relief Administration of the federal government and, as such, was not entitled to compensation; (3) that his occupation was not hazardous within the meaning of the State Compensation Act; Act No. 20 of 1914, as amended, and (4) that the injuries he received, which caused his subsequent death, occurred through his own misconduct.

After hearing the evidence tendered by these issues, the district judge granted judgment in plaintiff's favor for 300 weeks' compensation. The defendant Water Board has appealed from the adverse decision.

The facts of this case are not seriously disputed and we find them to be as follows: The United States government established the Federal Emergency Relief Administration with a view of relieving general unemployment throughout the country after the economic collapse of 1929. The plan adopted, in furtherance of re-employment, was for the ERA to supply, free of cost to various state and other public bodies, all necessary labor and a percentage of the materials to be used in work projects sponsored by the latter.

The Sewerage and Water Board of New Orleans, taking advantage of the opportunity offered by the federal government, made a proposal to the ERA which contemplated the execution of certain sewer-

age construction work in that section of New Orleans known as Fairway drive. Plans and specifications of the project were submitted to the proper federal authorities and, upon their approval, the ERA agreed to furnish all necessary labor for the work in contemplation free of cost to the defendant and also to pay 55 per cent. of the cost of the material to be used in the job.

William Washington was employed as a water boy on this project. He was paid by the ERA (later the Civil Works Administration) 35 cents per hour for an eight-hour work day. On October 15, 1934, while engaged in the performance of his duties, he attempted to board a moving truck of the Sewerage and Water Board, located at the site of the work, and, in so doing, he either missed his footing or slipped, which caused him to fall to the ground where he was run over by the rear wheels of the truck and sustained internal injuries from which he died three days later.

The evidence further shows that the ERA workmen on the job were under the supervision and control of a paid ERA foreman and that the Sewerage and Water Board had its assistant to the general foreman of the Sewerage Maintenance Department, one William F. Lex, at the site of the work to see that the job was carried out in accordance with the plans and specifications. Lex says that his duties were that of an "inspector"; that he was in constant attendance during working hours; and that, if any part of the construction was being improperly done, he would notify the foreman of the ERA to correct it. He further states that he did not have any authority over the workmen and that his powers were limited to that of inspection of the manner in which the work was being accomplished.

The plaintiff, on the other hand, has produced several colored laborers of the project who testified that they considered Lex as the real boss on the job and that they felt that they were supposed to obey his instructions.

Under this state of facts, we are called upon to determine, first, whether the relationship between the Water Board and the deceased was that of employer and employee or whether the ERA was an independent contractor. Counsel for the defendant maintains that Washington was not its employee in that it did not, and could not, exercise the right of selecting him; that it did not pay his wages; and that it could not fire him. Contra, counsel for plaintiff contend that the defendant supervised and controlled the progress of the work and that, while it did not select the deceased as its workman or pay his wages, still it had the power and authority to discharge him in case he was incompetent in the performance of his duties.

■ These postulations invite a discussion of the arrangement between the federal government and the defendant. The underlying purpose of the ERA was to foster and stimulate reemployment. In furtherance thereof, the government donated the labor and part of the cost of the material for projects sponsored by public bodies. While the labor and part of the materials to be used in construction jobs were a subsidy of the Administration, the project sponsored by the public board had to be approved by the proper governmental authorities, and the men who were to perform the work were selected and designated by these authorities from the relief rolls. Hence, it cannot be concluded that the sponsor of the work was the unqualified recipient of a gift, as certain conditions had to be met before the labor or materials would be furnished and the government had the choice of supplying only such men who were found by it to be in need of work. In this respect, the arrangement between the defendant and the ERA, being based upon mutual promises and other considerations, was a contract. The problem is, therefore, whether the contract was an independent one or whether the defendant exercised such supervision and control over the labor thus supplied as to warrant the conclusion that these workmen were in its employ.

Counsel for the defendant, in contending that the deceased was not the employee of the board, places much reliance upon the case of Todaro v. City of Shreveport et al., Court of Appeal, 2nd Circuit, 170 So. 356, 360, approved in part by the Supreme Court on writ of certiorari in 187 La. 68, 174 So. 111, 112. In that matter, the city of Shreveport entered into a contract with the CWA to tear down a structure located on the State Fair Grounds known as the Machinery building. While this building was being demolished by the employees of the CWA, it became necessary to remove a guy wire running from

an electric light pole to the front portion of the premises. In order to remove this wire, Todaro, the plaintiff, an employee of the Southwestern Gas & Electric Company, Inc., and other workmen went to the scene and prepared to do the necessary work. While standing on the sidewalk in front of the building, Todaro was injured by the falling of the canopy or shed which had been fastened to the building and which projected over the sidewalk. He thereafter brought an action in damages against the city of Shreveport and the State Fair alleging in part that he was injured through the negligence of the CWA workmen, who were employees of the city and State Fair in the performance of the demolition work. Our Brethren of the Second Circuit held that the workers were not employees of the defendants, inasmuch as they were engaged by the CWA and that the latter was an independent contractor. In disposing of the plaintiff's contention, the court said:

"Plaintiff's counsel forcefully contend that the workmen who were engaged in tearing down the building were servants of the City and the Fair, and that the defendants are liable for their negligent acts under the master and servant doctrine. With equal force, defendants' counsel argue that such workmen were not their servants, but were servants and employees of the CWA which occupied a relation to the defendants closely akin to that of independent contractor and employer, and that the doctrine which affords immunity to the employer for the tortious acts committed by independent contractors is here applicable.

"In 39 Corpus Juris, verbo Master and Servant, §§ 1453 and 1454, we find the following with reference to the matter of determining when the relation of master and servant exists:

" 'The relation of master and servant exists where the employer selects the workman, and may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance.' Section 1453.

" 'To constitute the relation of master and servant for the purpose of fixing liability on the former for acts of the latter under the doctrine of respondeat superior, it is indispensable that the right to select the person claimed to be a servant should exist. Furthermore something more than the mere right of selection is essential to the relation.

This right must be accompanied with the power and duty to control the alleged servant while in his employ; this, it is said, is one of the principal tests of the relation. If workmen do not stand in such relation to the person sought to be charged as to make it his duty to control them, they are not his servants and he is in no sense responsible for their acts under the doctrine of respondeat superior. Where the person employed is in the exercise of an independent and distinct employment, and not under the immediate control, direction, or supervision of the employer, the latter is not responsible for the acts of the former.' Section 1454.

"According to our appreciation of the evidence, all CWA workmen, including those used in demolishing the Machinery Building, were employed, paid, and discharged by the CWA through its proper authorities. As before stated, the purpose of creating and maintaining that entity of the federal government was to provide employment for the numerous unemployed throughout the United States. In the case of the project in question, the workmen were selected by and through the Caddo parish office of the CWA, which was operated by a district supervisor and his assistants, and were dispatched to the fairgrounds. There they were placed under the direction and control and in the charge of the project superintendent who was also on the federal payroll and who was assisted by several other CWA employees as labor foremen on particular sections of the project. The sponsors of the work, the defendants herein, had no authority to select the personnel of the workmen, nor did they have the right to discharge any person who was sent there. Of course, they could appeal to the proper authorities for the assignment or discharge of certain employees, but the granting of their requests was left entirely to the discretion of those to whom the appeal was made. It is true that the official CWA bulletin, which pertained to and governed the project, required the sponsors to pay for the services of architects, engineers, rodmen, superintendents, inspectors, and all other professional services, and that in connection with the work, the Fair actually employed, compensated, and enjoyed the use of an architect, several engineers, and a superintendent. Also, we are satisfied that these Fair employees, and particularly Mr. W. A. Hirsch, secretary-manager of the Fair, co-operated and worked with the project superintendent and labor foremen by

making numerous suggestions and requests regarding the details and methods of the work. Furthermore, it was within the province and power of the sponsors to cause a cessation of the work at any time that they so desired. But notwithstanding all of this, there was not present the principal element essential to warrant and cause the application here of the master and servant doctrine, viz., the element of control by the sponsors over the CWA workmen. In the light of the peculiar facts revealed by the record in this case and the above-quoted provisions of law, we must hold that the workmen were not employees or servants of either the City or Fair, and that neither defendant is liable to plaintiff under the respondeat superior doctrine.

"The Supreme Court of Nevada, in the comparatively recent case of State ex rel. State Board of Charities and Public Welfare v. Nevada Industrial Commission, 55 Nev. 343, 34 P.2d 408, held that:

" 'The state, counties, school districts, and the municipal corporations thereof, where federal emergency relief work is carried on, are not employers within the meaning of the term "employers" as used and defined in the Nevada Industrial Insurance Act, and the persons placed at work upon such projects are not employees within the meaning of the term "employees" as defined and used in the Nevada Industrial Insurance Act.' "

We have found it apt to quote, in full, the finding of the facts and law in the cited case in order to demonstrate that there is no apparent distinction which can be drawn between the relation of the parties in that matter and the circumstances existing in the case at bar. Here, as there, the construction work was being performed under the supervision, direction, and control of an ERA foreman who was responsible to the ERA for the performance of the work. Here, as there, the Sewerage and Water Board had its inspector or supervisor to check the progress of the work and to see that it was done in accordance with the plans and specifications. The position of Mr. Lex, in the instant case, may be said to be analogous to that of the architects, engineers, and rodmen in the Todaro Case.

The Supreme Court granted writs of review in the cited case and specifically approved the ruling of the Court of Appeal, with respect to its conclusion on this phase of the matter, by declaring: "That the relation of CWA to the City of Shreveport was that of an independent contractor; that the city had no control over CWA workmen; that these workmen were not employees or servants of the city; and that, therefore, the city was not liable under the respondeat superior doctrine."

Counsel for the plaintiff, however, tell us that the facts in the Todaro Case are different from those of the case at bar in respect of the degree of control exercised by the sponsors of the project. They argue that the court, in the cited case, found that, "in view of the peculiar facts" revealed by the record, there was no control whatever exercised by the city over the CWA workers, whereas, in the case at bar, the trial judge found that the defendant board directly supervised the work and that the record here contains conclusive evidence upon which to substantiate this holding. But, as we have said, we are unable to observe any distinction between the facts of the two cases. Counsel for plaintiff also point out that the Supreme Court, in considering another question raised in the Todaro Case noted that "The City of Shreveport is not engaged in the business of wrecking its own public buildings and those of its inhabitants." It is contended that the cases may be differentiated on this score because, here, the Sewerage and Water Board is engaged in the business of constructing sewers. We do not consider, however, that this difference would be material in determining whether the relation of employer and employee existed because the established test is founded upon the right of the master to supervise, direct, and control the actions of the servant and not upon the nature of the master's business.

Counsel for plaintiff have cited a number of compensation cases, involving relief workers, adjudicated by courts of other states, in support of the proposition that, under the facts here presented, the relation of master and servant existed. A review of those authorities has convinced us that the facts upon which the courts' holdings are based are distinguishable from those in the instant matter.

In Forest Preserve Dist. of Cook County v. Industrial Commission et al., 1934, 357 Ill. 389, 192 N.E. 342, a state relief worker named Putkonen was injured while doing work for the Forest Preserve District. At the time of his injuries, he was under the direction and supervision of the district's foreman, one Tessien. The court held that, under these circumstances, the relief worker was an employee of the district.

In Hattler v. Wayne County, 1935, 117 Pa. Super. 570, 178 A. 513, the decedent was a recipient of relief under a state act. He was assigned to work on a county road under the direction of the commissioners of Wayne county. The assignment was made at the request of the commissioners and a truck was provided by the county at its expense to transport him and others to the road where the work was to be performed. The court found, as a fact, that the road foreman of the county controlled the result of the work done by the deceased and directed the manner in which it should be done. It further held that the county had exercised the right to select the men for the project because it made application for men to do a particular task.

In Weber County-Ogden City Relief Committee v. Industrial Commission of Utah, Utah, 71 P.2d 177, one North, the injured employee was on the relief rolls of Weber County-Ogden City Relief Committee. When his time came to be put to work, he was given an order calling for 72 hours of labor on a state project for Ogden City under the direction and control of a Mr. McGregor, who was the state supervisor of Ogden City, and had charge of the work which was being done. Mr. McGregor testified that North was employed by Ogden City; that the work was carried on wholly and solely by it, so far as supervision was concerned; and that he directed the men on this project in his regular capacity as state supervisor. The court, in holding that North was an employee of the city, comments upon the rulings of various leading authorities inclusive of the Supreme Court of the United States in Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 255, 53 L.Ed. 480, where it was said that the power of substitution or discharge and the payment of wages are not the ultimate facts in determining the relationship of master and servant but only such facts as are more or less useful in determining "whose is the work and whose is the power of control."

We fully agree with the law as laid down by the courts in the cited cases. In truth, the law respecting the test to be used in determining the relation of master and servant is well settled and the authorities of the various states are in harmony. But the facts disclosed in the cited cases are not analogous to the circumstances obtaining in the case at bar.

Counsel for plaintiff further insist that the facts of this case may be likened to those appearing in Quayle v. Sewerage & Water Board, 131 La. 26, 58 So. 1021. In this contention counsel have again fallen into error, for the facts in the Quayle Case show that the defendant board not only controlled, directed, and supervised the performance of the work, but that the so-called independent contractors (La Couture & Berry) were subject to discharge at a moment's notice by the board and that the power was lodged in the board's inspector to discharge any men working upon the job.

It is suggested, however, that there is convincing evidence in the record that Lex, defendant's representative, had the power to discharge ERA workmen. But we fail to find any testimony to support such a finding. It is quite probable that, in the event a certain man was found incompetent to perform his duties, the ERA, upon complaint of the Sewerage and Water Board, would have removed him. In such case, it could hardly be deduced that the defendant had the right to discharge workmen on its own initiative. It is also true that one of the laborers, testifying for plaintiff, said that Lex had discharged a workman without consulting the ERA. The fact that Lex did assume such power cannot be pointed to as vesting him with the right to do so, for, as we have already stated, the test in determining the relationship of master and servant is not the supervision and control actually exerted but the right to direct, supervise and control.

Inasmuch as we discern no distinction between the facts of this matter and those presented in the Todaro Case, we hold that the deceased was not an employee of the defendant board.

Counsel for plaintiff alternatively contend that, even though the deceased was not the defendant's employee, their client is nevertheless entitled to compensation under the provisions of section 6 of the Employers' Liability Act, Act No. 20 of 1914, as amended by Act No. 85 of 1926, § 1. The pertinent portion of the section reads as follows:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the

principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed."

It is asserted that, if the ERA was an independent contractor and the deceased its employee, it follows that the defendant, as sponsor of the project, is liable as principal for compensation under the foregoing section. But counsel for defendant says that section 6 of the act has no application to an incorporated public board or commission of this state (such as the Sewerage and Water Board), and he cites paragraph 1 of section 1 of that law as sustaining his argument. The portion of the statute relied upon provides:

"This act shall apply only to the following:

"1. Every person in the service of the State, or of any parish, township, incorporated village or city, or other political subdivision, or incorporated public board or commission in this State authorized by law to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the State, or of any parish, township, incorporated village or city, or other political subdivision, or incorporated public board or commission in this State authorized by law to hold property and to sue and be sued; and for such employee and employer the payment of compensation, according to and under the terms, conditions and provisions hereinafter set out in this act, shall be exclusive, compulsory and obligatory; *Provided that one employed by a contractor who has contracted with the State, parish, township, incorporated village or city, or other political subdivision, or incorporated public board or commission in the State, through its proper representative, shall not be considered an employee of the State, parish, township, incorporated village or city, or other political subdivision, or incorporated public board or commission.*" (Italics ours.)

The gravamen of defendant's postulation is that, although an employee of a public board is covered by the Compensation Act under the foregoing section, whether the employment is hazardous or not, the proviso which we have italicized clearly indicates that it was the will and intention of the Legislature that such public board could not incur liability under the provisions of section 6 of the statute.

 Construing the two sections together, it is our conclusion that the contention is not sound. It will be noted that section 6 includes any and all principals without exception. If it had been the intention of the Legislature to exclude a public body from the responsibility imposed thereunder, it is patent that the lawmakers would have so declared. The proviso contained in paragraph 1 of section 1 of the act merely sets forth that the employee of one who contracts with the state, parish, public board, etc., shall not be considered an employee of the latter. In other words, the coverage, which is exclusive, compulsory, and obligatory, is limited to those persons employed directly by the state, public board, etc. The act is applicable to such employees irrespective of whether their employment is hazardous or not. It seems to us that the correct construction to be placed upon the provisions of sections 1 and 6 is that, if a state board, political subdivision, etc., lets out work by contract, which is of a character essential to its business, then it is liable to the employee of the independent contractor in compensation provided that the work performed is of the hazardous nature as defined by the act. In other words, the employee of the contractor must prove such facts as would have entitled him to compensation if the suit had been brought against his employer.

 The defendant also maintains that the work done under this project was not part of the board's business and that it had no power or authority from the Legislature to execute or engage in sewer construction work except in the manner set forth by section 24 of Act No. 6 of the extra session of the Legislature of 1899 under which it was organized. The applicable part of section 24 declares:

"That all contracts for the construction of the said public systems of sewerage and water shall be let to the lowest bidder by sealed proposals or by public auction, as the board may determine."

The vice of this argument is that the quoted provision depended upon does not prohibit the Sewerage and Water Board from engaging in sewer construction work, if it so desires, but merely provides that, where it sees fit to let out this work on contract, such contract shall be let to the lowest bidder. This deduction is manifest in view of section 8 of the same statute which declares that the board is organized and constituted for the purpose of constructing, controlling, maintaining, and operating the public water system and the public sewerage system of the city of New Orleans.

 The defendant further asserts that section 6 of the Compensation Act is not relevant here because it applies only to a contractor who is engaged in the contracting business, who agrees with the principal to execute the work, and that the ERA is obviously not engaged in the contracting business. The difficulty with this argument is that it is inconsistent with defendant's principal contention, i. e., that the relation of employer and employee did not exist between the deceased and itself. It has successfully maintained that the deceased was not its employee. The only theory upon which that conclusion could be based is that the ERA was an independent contractor. Hence, the defendant is not in a position to proclaim that that governmental agency is not engaged in the contracting business.

The next point raised by the defendant is that the work performed by the deceased as water boy on its construction job was not hazardous within the contemplation of the law. This proposition is not tenable. Paragraph 2(a) of section 1 of the Compensation Act provides that "the * * * construction * * * of * * * water works, pumping works, * * * and * * * engineering works" is a hazardous undertaking. In Gilyard v. O'Reilly, 4 La.App. 498, the defendant contractor was sued for compensation by reason of injuries sustained by his employee on a job he was performing for the Sewerage and Water Board. We held that the work was hazardous within the meaning of the law and there is no difference between the work there contracted for and that done by the ERA in this case. Moreover, the deceased was killed by a truck of the defendant, and it is well established that, where the employee's work necessitates that he be sub-jected to contact with engines and other forms of machinery, he is engaged in a hazardous occupation.

Finally, defendant contends that plaintiff should not recover because the deceased was killed as a result of his own misconduct in that he attempted to board a moving truck so as to avoid walking some distance to get water to distribute to the workmen. The most that can be said about Washington's act in this respect is that it was negligent and it is certain that he did not willfully intend to injure himself. The proposition contended for has been answered adversely to defendant in Plick v. Toye Bros. Auto & Taxicab Co., 13 La.App. 525, 127 So. 59, and Thompson v. Bradford Motor Freight Line, La.App., 148 So. 79. The cases of Heard v. Dubach Lumber Co., 128 La. 826, 55 So. 471, and Crysel v. Briggs & Co., La.App., 146 So. 489, 491, cited by defendant, are inapposite.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

