# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 08-1334

EVA L. BANKSTON

VERSUS

LSU HEALTH SCIENCES CENTER, ETC.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20053518
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters and Marc T. Amy, Judges.

**AFFIRMED; MOTION TO STRIKE GRANTED.**

Owen M. Goudelocke
Assistant Attorney General
556 Jefferson Street, 4th Floor
Lafayette, LA 70501
(337) 262-1700
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana, Board of Supervisors of
    Louisiana State University and Agricultural
    and Mechanical College

Joseph J. Bailey
Provosty, Sadler, deLaunay, Fiorenza & Sobel
Post Office Drawer 1791
Alexandria, LA 71309-1791
(318) 445-3631
COUNSEL FOR DEFENDANT APPELLEE:
    Louisiana Safety Association of Timbermen-Self Insurers Fund

Douglas D. McGinity
McGinity Law Firm
Post Office Box 55531
Metairie, LA 7 0055-5531
(985) 809-6118
COUNSEL FOR PLAINTIFF APPELLANT:
    Eva L. Bankston

AMY, Judge.

The plaintiff sustained injuries after slipping on a wet floor in a hospital where she was assigned to work by another organization. She filed suit, naming the state-owned hospital as the defendant. The defendant filed a motion for summary judgment, contending that it was immune from tort liability and that the plaintiff's exclusive remedy was in workers' compensation on the grounds that the plaintiff was its borrowed employee. The trial court granted the motion. The plaintiff appeals, arguing that the trial court erred in its determination of her employment status and in allowing the hearing to proceed despite the plaintiff's alleged lack of representation. For the following reasons, we affirm the trial court's decision and grant the defendant's motion to strike.

### Factual and Procedural Background

The plaintiff, Eva Bankston, was employed by the Lafayette Council on Aging ("LCOA")—an organization, which according to the affidavit of the executive director of Senior Service America, is related to a federal training program authorized under Title V of the Older Americans Act. LCOA operates using the grant funds from the Department of Labor and is designed to generate employment among the elderly. LCOA contracted with University Medical Center ("UMC")[1], a Host Agency, for its Senior Aides to perform community service work assignments. The plaintiff, a Senior Aide, was assigned to UMC to perform her work assignment. The plaintiff alleges that on July 20, 1994, she slipped on the wet floor outside of a patient's room at UMC. She contends that the fall caused injuries to, among other things, her knees, wrist, and elbow.

The plaintiff filed a negligence suit against the defendant. Louisiana Safety

_____

[1] According to UMC, UMC was established and is operated by the State of Louisiana, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.

Association of Timbermen-Self Insurers Fund, the compensation carrier for LCOA, intervened in order to be reimbursed for the medical and rehabilitative benefits it had paid should the plaintiff's claim succeed. On December 6, 2007, the defendant filed a motion for summary judgment, arguing that it was immune from tort liability pursuant to La.R.S. 23:1034 because the plaintiff was an employee in the service of the state at the time of her accident. The trial court denied the motion, reasoning that La.R.S. 23:1034 precluded a finding that the plaintiff was a borrowed or joint employee in light of the language that stated that an employee of a contractor who has contracted with the state is not an employee of the state.

Thereafter, the defendant filed a Motion for New Trial/Rehearing, which the trial court denied. The defendant then filed a writ application, which was subsequently denied by this court in an unpublished writ opinion, *Eva Bankston v. LSU Health Sci. Center Health Care Serv. Div. Univ. Med. Center*, CW 08-527 (La.App. 3 Cir. 5/7/08). On May 8, 2008, a hearing was conducted, at which time the State resubmitted its exhibits. At this hearing, after noting that the plaintiff's counsel waived its presence, the trial court found that the plaintiff was a borrowed employee of UMC. Accordingly, it granted the defendant's motion for summary judgment. The plaintiff appeals, asserting the following assignments of error:

(1)     The trial court erred by reversing its earlier denial of the Hospital's motion for summary judgment, as the matter is simply inappropriate for summary judgment because there are genuine issues of material fact vigorously contested by the parties in this case. The contract between the parties is disputed, and the sworn testimony presented puts several genuine issues of material fact at issue. The trial court erred by finding that there are no genuine issues of material fact as required when granting a summary judgment.

(2)     The trial court erred in concluding that the plaintiff[,] Eva Bankston[,] and other paid employees of the Lafayette Council

2

[on] Aging who volunteered their time at the Hospital were actually "employees of the state" at the Hospital, and as such, limited to recovery for any injuries incurred while volunteering there, under the Louisiana Workers Compensation Act.

(3)     The trial court erred by not having the plaintiff represented by counsel at the May 8, 2008 motion for new trial hearing, where the Trial Court reversed its earlier position denying the Hospital's summary judgment.

## Discussion

*Standard of Review*

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination" of actions. La.Code Civ.P. art. 966(A)(2). The supreme court in *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La. 5/17/06), 930 So.2d 906, 910, stated:

> This court reviews a grant or denial of a motion for summary judgment *de novo*. *Schroeder v. Board of Supervisors of Louisiana State University*, 591 So.2d 342, 345 (La.1991). Thus, this court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Robinson v. Heard*, 01-1697, pp. 3-4 (La. 2/26/02), 809 So.2d 943, 945.

*Status of Employment*

The defendant argues that it is immune from tort liability in light of the fact that it was the plaintiff's joint employer; accordingly, it asserts that the plaintiff's recovery is limited to workers' compensation benefits. The plaintiff, however, contends that she was an employee of LCOA, not the defendant. Therefore, we first discuss the statutory employee and borrowed servant doctrines and whether these doctrines are

3

available to employees of contractors who contract with the State in light of the plaintiff's argument that La.R.S. 23:1034 precludes such an application.

Regarding the statutory employer relationship, La.R.S.23:1061(A) provides:

(1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

4

Insofar as the borrowed servant doctrine is at issue, we set forth the pertinent law. Louisiana Revised Statutes 23:1031(C) provides:

C. In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.

Also, this court set forth the following factors to aid in the determination of whether a borrowed employment relationship is present:

1) Which employer has control over the employee and his or her work, beyond the mere suggestion of details or cooperation; 2) Which employer's work is being performed; 3) Whether an agreement existed between the general employer and the borrowing employer; 4) Whether the employee acquiesced in the situation; 5) Whether the general employee terminated his relationship with the employee; 6) Which employer furnished the necessary tools and the place where the work was performed; 7) Whether the new work situation was over a considerable period of time; 8) Which employer had the right to terminate the employee; and 9) Which employer had the obligation to pay the employee's wages. *Barnett v. Meridian Res. & Exploration*, 01-1114, p. 4 (La.App. 3 Cir. 2/6/02), 815 So.2d 1016, 1019 (quoting, *Vaughn v. BFI Waste Systems of North America, Inc.*, 01-1105 (La.App. 4 Cir. 7/25/01), 793 So.2d 410.

*Cobb v. Delta Exports, Inc.*, 05-509, pp. 6-7 (La.App. 3 Cir. 12/30/05), 918 So.2d 1080, 1086-87, *writ denied*, 06-0225 (La. 4/24/06), 926 So.2d 551. The fourth circuit

further instructed that no single factor is decisive. *Andrew-Hong v. Gray Ins. Co.*, 06-93 (La.App. 4 Cir. 11/2/06), 945 So.2d 124.

While they disagree as to the doctrines' application, the parties acknowledge that there is a difference between a statutory employee relationship and a borrowed servant relationship as evidenced by the plaintiff's brief and a discussion that took place at the hearing. The first circuit in *Arabie Brothers Trucking Co. v. Gautreaux*, 03-120, p. 10 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, 940, in distinguishing between statutory employees and borrowed servants for workers' compensation purposes, stated:

> The terms "statutory employee" and "borrowed employee" are distinguishable for workers' compensation purposes. This distinction is still recognized following the 1997 amendments to La. R.S. 23:1031 and 23:1061, which overruled the statutory employer tests as stated in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986), and *Kirkland v. Riverwood International USA, Inc.*, 95-1830 (La.9/13/96), 681 So.2d 329. Moreover, the test for determining who is a borrowed employee is still applied by the courts. See *Doucet v. National Maintenance Corp.*, 2001-1100, p. 8, n. 6 (La.App. 1 Cir. 6/21/02), 822 So.2d 60, 67, n. 6; *Maddox v. Superior Steel*, 2000-1539, p. 7 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 574.

(Footnotes added).

In *Willis v. Redfish Renovations, LLC*, 04-968, pp. 3-4 (La.App. 4 Cir. 12/15/04), 891 So.2d 748, 751, the fourth circuit held:

> The 1997 amendments to La. R.S. 23:1061 presented some very important additions to the statutory employer determination. Act 315 of 1997 provided that "work shall be considered part of the principal's trade, business or occupation if it is an integral part of or essential to the ability of the principal to generate that individual's principal's goods, products, or services." The amendments further provided that, except in the two-contract situation under La. R.S. 23:1061(A)(2), a statutory employer relationship "shall not exist ... unless there is a written contract between the principal and the contractor which ... recognizes the principal as a statutory employer." La. R.S. 23:1061(A)(3). When there is such a written contractual recognition of the relationship, there is then a "rebuttable presumption" of such a relationship, which may be

overcome "only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." *Id.*

In the present case, the record reflects that the contract between Redfish and Rapid does not provide an express provision stating that Redfish was a statutory employer of Rapid's employees. Since the contract between Redfish and Rapid fails to include the necessary provision, Redfish does not satisfy the criteria for a statutory employer pursuant to La.R.S. 23:1061(A)(3). Therefore, in order to be considered a statutory employer, Redfish must fulfill the criteria of the two-contract defense. *See* La.R.S. 23:1061(A)(2).

The court in *Griffin v. Wickes Lumber Co.*, 02-0294, p. 6 (La.App. 4 Cir. 12/20/02), 840 So.2d 591, 596, elaborated on the significance of a written contract when distinguishing between the two doctrines: "there was no intention of the legislature to require the written contract provision to extend to borrowed employers under La. R.S. 23:1031. Moreover, a plain reading of La. R.S. 23:1031 and 1061 reveals that the written contract provision only applies to statutory employers, not borrowing employers."

However, the plaintiff argues that La.R.S. 23:1034 prohibits the application of these doctrines when the State is the defendant. Louisiana Revised Statutes 23:1034(A) provides:

The provisions of this Chapter shall apply to every person in the service of the state or a political subdivision thereof, or of any incorporated public board or commission authorized to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the state or a political subdivision thereof or of any such incorporated public board or commission; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; provided that one employed by a contractor who has contracted with the state or other political subdivision, or incorporated public board or commission through its proper representative, shall not be considered an employee of the state, or other political subdivision, or incorporated public board or commission; further, provided that members of the police department, or municipal employees performing

7

police services for any municipality who are not elected officials shall be covered by this Chapter and shall be eligible for compensation; and provided further that criminal deputy sheriffs for the parish of Orleans shall be covered by this Chapter and shall be eligible for compensation as provided herein.

We find no merit in the plaintiff's assertion regarding the preclusive effect of La.R.S. 23:1034. Rather, we find that the classification of an employee as public or private is inconsequential as explained in H. ALSTON JOHNSON, III, WORKERS' COMPENSATION LAW AND PRACTICE § 122, IN 13 LOUISIANA CIVIL LAW TREATISE (4TH ED. 2002). The author stated:

> There is no suggestion in the Act that the provisions of La.R.S. 23:1061 are not fully applicable to public and private employers alike, and this matter was decided favorably to the employee of a contractor in the well-considered opinion in *Washington v. Sewerage and Water Board* [180 So. 199 (La.App. Orl. Cir. 1938)]. There was at least some support for the contrary argument, principally based upon a portion of La.R.S. 23:1034 which, in discussing the obligatory nature of compensation for public employees, states:

>> One employed by an independent contractor who has contracted with the State or other political subdivision, or incorporated public board or commission [. . . .], shall not be considered an employee of the state, or other political subdivision, or incorporated public board or commission.

> [. . . .]

> In view of the fact that the employee of an independent contractor is never to be regarded as the direct employee of the principal, the question arises as to why this express provision was included. The answer seems to lie in the fact that the claimant who is a direct public employee enjoyed certain advantages which are not accorded a private employee (mandatory coverage, as well as the right to recover even though the work done is not a part of the employer's regular business). The legislature may have felt that no sound policy would be served by extending these special advantages to the employee of a private concern acting as an independent contractor for a public body principal.

> It was thus concluded that if an employee of an independent contractor hired by a public body was to recover from the latter, he was required to show that the contract was for the execution of hazardous work and that it covered a part of the regular business of the public

body.  This placed public and private employers on precisely the same footing in this respect, and any apparent conflict between La. R.S. 23:1034 and La. R.S. 23:1061 was resolved in this way.

With the elimination of the hazardous business requirement, and the imposition of mandatory coverage in almost all instances, there is some doubt that public employees would any longer have any special advantages over private employees.  Thus the distinction (if any were intended by these provisions) may no longer be of any practical significance.  The conclusion of the *Washington* court remains sound: the public body principal is to be treated in the same fashion as a private principal would be under La. R.S. 23:1061.

Accordingly, we find that La.R.S. 23:1034(A) does not preclude the arguably excluded employees and employers from establishing an employer-employee relationship via the statutory employer or borrowed servant doctrines.  Having found no preclusive effect of La.R.S. 23:1034, we turn to consideration of the facts presented to determine whether the defendant meets the definition of a borrowed or statutory employer.

We evaluate the contractual language in the agreement between UMC and LCOA to determine if UMC qualifies as a statutory employer.  The contract provides in pertinent part:

**105  SENIOR AIDES Project/Host Agency Agreement**

To comply with the requirements of the Senior Service America, Inc., Senior AIDES Program, operated under Title V of the Older Americans Act, this Agreement is voluntarily entered into by UNIVERSITY MEDICAL CENTER[,] hereinafter referred to as the Host Agency, and LAFAYETTE COUNCIL ON AGING[,] a subgrantee of the Senior Service America, Inc., Senior AIDES Program, hereinafter referred to as the Sponsor Agency.

The Host Agency agrees to provide a safe and healthful work site for each Senior Aide, to provide adequate orientation and training necessary to perform assigned duties in accordance with a written community service assignment description, to provide additional training as opportunities occur, and, to the extent possible, to treat each Senior Aide as a regular member of the Host Agency staff.

9

The Host Agency agrees to consider each Senior Aide for regular employment, either full-time or part-time, when vacancies occur in the Host Agency Staff or when new positions are created. The Host Agency will also recommend suitable training for unsubsidized placement of the Senior Aide.

The Host Agency understands that the maximum length of time that a Senior Aide may remain in the same assignment shall not exceed a total of 24 months, except under limited circumstances which will be determined by the Senior AIDES Program. Moreover, the Host Agency understands that the Sponsor Agency reserves the right, following reasonable notice, to reassign any Senior Aide at any time that reassignment will increase the Senior Aide's opportunities for training or unsubsidized employment, or will otherwise serve the best interests of the Senior Aide, or will better support the goals and objectives of the Senior AIDES Program.

The Host Agency agrees that no other national Title V project sponsor will be provided a work site while this Agreement is in effect.

The Host Agency agrees to abide by the hours and work schedules mutually agreed to for each Senior Aide and to provide properly prepared time sheets, periodic performance evaluations, and other required documents. In addition, the Host Agency agrees and understands that each Senior Aide will be required to attend periodic Senior AIDES Project meetings during regular working hours.

[. . . .]

This agreement may be amended by written mutual agreement.

This contract includes no express language making UMC a statutory employer of LCOA's employees, particularly, the plaintiff. Accordingly, UMC is not a statutory employer of the plaintiff. *See* La.R.S. 23:1061(A)(2) and La.R.S. 23:1061(A)(3). We, therefore, consider the borrowed servant factors set forth above.

Right of Control

The plaintiff claimed in her deposition that Eugenia Turner, a LCOA employee, was in "charge of the group." The plaintiff confirmed that "once [the plaintiff] got [to UMC] somebody from UMC would either tell [her] or somebody else in [the] group . . . . '[o]kay. Y'all go to Room 434' or 'Y'all go up down the hall

and do this[.]'" She also indicated that Mary Dell Berard, a UMC nurse, sometimes instructed her where to perform her assignments in the hospital. Mary Dell Berard confirmed, via affidavit, that "[w]hile Eva Bankston performed work assignments as a Senior Aide at UMC, she was supervised by UMC personnel." She also explained that "[a]s a UMC supervisor, she personally verified the hours worked by Senior Aides."

Further, the Project Director for the Senior Aides of LCOA, Brenda Pourciau, stated in her affidavit that "UMC personnel supervised Eva Bankston in the performance of her community service work assignments as a senior aide at UMC." She continued, stating that LCOA "did not provide work site instruction, specific work assignments or supervision while senior aides or Eva Bankston engaged in the performance of their community service work assignments at UMC." She further corroborated the assertion that UMC verified the hours worked by Senior Aides. This factor militates in favor of UMC being the plaintiff's borrowed employer.

Which Employers' Work is Being Performed

The Senior Aide Assignment Description provides that the plaintiff's duty was to "help children with the Reading Program" in the "Pediatric Unit, Child & Adolescent Unit Family Practice Clinic, Kid-Med Outpatient Surgery" under the supervision of "Mary Dell Berard, Pediatric RN Supervisor 24 East/Pediatric Unit." It also stated that the training was provided by the Host Agency, UMC.

The plaintiff testified that she and the other LCOA employees assigned to UMC read to the patients and occasionally brought them water. She claims that these duties qualified her as a volunteer, because "[p]aid Hospital employees don't sit for hours reading to patients unless they have a strong desire to be fired." She contends

11

that community work is the work of LCOA, not UMC. The defendant argues, however, that the intent of referring to the Senior Aides' work as community service was to "satisfy the requirements of the Older Americans Act."

The trial court hesitated in ruling on this factor, stating, ". . . . I have a question about one factor. And it's the one factor that I think that is most important. And that is the question of whose work was being performed." It further explains its hesitation, stating: ". . . . I guess the issue for me is who created those [community work] assignments. If it was UMC, then I agree with you, they're doing the work of UMC. But its – I'm just looking for some indication in the record as to who determined."

In reviewing the affidavit of Brenda Pourciau, we again find support in favor of UMC in the provision that states: "Lafayette Council on Aging did not provide work site instruction, specific work assignments or supervision while senior aides or Eva Bankston engaged in the performance of their community service work assignments at UMC." The plaintiff's testimony regarding her work duties, the affidavit of a LCOA director, and the fact that the plaintiff's work extended beyond a reading program and crossed over into patient care (i.e. "giv[ing] them fresh water") all support the conclusion that the work being performed was that of UMC.

Agreement between Borrowing and Lending Employer

The plaintiff argues that the contract's language stating that the Hospital agreed to "provide additional training as opportunities occur, and, *to the extent possible*, to treat each Senior Aide as a regular member of the Host Agency staff," shows that the contract "specifically separated and distinguished the [LCOA] employee/volunteers at the Hospital from the regular Hospital employees." (emphasis added). The

12

defendant, however, contends that nothing in the agreement "preclude[s] the existence of a borrowed employee relationship." The contract's provisions that provide that UMC will treat each Senior Aide as a regular employee and "consider each Senior Aide for regular employment, either full-time or part-time, when vacancies occur in the Host Agency Staff or when new positions are created" lend support to the notion that there was an agreement between the two employers that the Senior Aides were being viewed as borrowed employees until they could fill a regular employee position.

The Employee's Acquiescence

The work assignment description contains the plaintiff's signature, which evidences the fact that she did not object to the employment designation. Furthermore, she worked at UMC for approximately four months, without complaints as to her work assignment. Despite the plaintiff's argument that though she freely volunteered at the Hospital, she "never considered herself nor was she treated as an employee of the Hospital," we find that her acquiescence to the work assignment was sufficient for purposes of this evaluation. Thus, this factor, too, weighs in favor of the defendant's position.

Termination of the Employee by the General Employee

The plaintiff was never terminated by either LCOA or UMC. Accordingly, this factor does not offer much in the way of defining the plaintiff's work status.

Furnishment of the tools and location necessary for employment

The record reveals that the plaintiff's work was solely performed at UMC. The plaintiff asserts that the tools were her own, i.e. "her own labor and eyes while reading to the patients and her own labor and arms in sometimes replenishing their

13

water." While this assertion may be true, this factor is principally addressing the question of which employer made it possible for her to perform her work. Insofar as UMC provided the work space, this factor gives strength to the defendant's assertion that the plaintiff qualified as a borrowed employee.

Length of Time at New Work Environment

The record indicates that the plaintiff performed her work assignments at UMC from March 2004 to July 2004. As we note that the duration of her time at UMC was relatively short, this factor does little to advance the argument of either party.

Right to Terminate the Employee

The affidavit of UMC supervisor, Mary Dell Berard, states that "UMC had the unilateral authority to dismiss and/or terminate Eva Bankston or any Senior Aide from working at UMC for actions that could endanger patient care or discredit the institution." The Host Agency Agreement, however, provides that:

> [T]he Host Agency understands that the Sponsor Agency [LCOA] reserves the right, following reasonable notice, to reassign any Senior Aide at any time that reassignment will increase the Senior Aides' opportunities for training or unsubsidized employment, or will otherwise serve the best interests of the Senior Aide, or will better support the goals and objectives of the Senior AIDES Program.

Since the contract contemplates a reassignment and not specifically a termination, we turn to the affidavit of the LCOA Project Director, Brenda Pourciau, which provides that "[i]n the event UMC determined to dismiss Eva Bankston or discontinue her community service work assignment at UMC, the [LCOA] could not require that UMC change its position. Accordingly, the record shows that UMC had the right to terminate the plaintiff's involvement with the Hospital, albeit not with LCOA. This factor, then, supports the defendant's contention.

Payment of Employee's Wages

14

This factor does not appear to be in dispute; LCOA paid the plaintiff. Accordingly, the plaintiff is afforded the benefit of this factor.

After applying all of the factors, we find that the jurisprudential test demonstrates that the plaintiff was a borrowed employee of UMC. This determination, which thoroughly covered the evidence presented, precludes the necessity of discussing the plaintiff's assignment of error regarding the existence of genuine issues of material fact. Thus, for the legal and factual reasons set forth above, the trial court correctly determined that the plaintiff's exclusive remedy is in workers' compensation.

*Counsel's Waiver of Presence*

The plaintiff also contends that the trial court erred by allowing the May 8, 2008 hearing to proceed without the plaintiff being represented by counsel. She claims that the "[t]rial [c]ourt very easily could have ruled in plaintiff's favor had plaintiff [sic] counsel been there to answer the trial [c]ourt's questions regarding 'whose work was being done'. We find that this assignment of error lacks merit for several reasons. Primarily, we disagree with the plaintiff's position in light of the factor that a waiver was noted for the record. Also, there does not appear to be any form of objection in the transcript of the hearing.

Further, La.Code Civ.P. art. 966(B), which states, in pertinent part: "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." This article does not list an oral argument as a permissible ground on which to base the granting or denial of summary judgment.

15

The trial court's request for more information regarding the issue of whose work was being performed was stated as follows: "[b]ut I guess what I'm asking you to address is the question of what else in the record might indicate that Ms. Bankston was, in fact, doing the work—or performing the ordinary work of UMC." Because she did not rely on the counsel's argument, but rather she sought the location of evidence in the record, we do not find that she exceeded the scope of La.Code Civ.P. art. 966. This is true, particularly in light of the fact that this was the second time this issue was before the court and the hearing on the first motion for summary judgment afforded the plaintiff an opportunity to present its evidence in opposition thereto. The second motion for summary judgment was heard and decided on the discovery of new law, rather than new evidence. Accordingly, this assignment is without merit.

*Motion to Strike*

We note that, on appeal, the plaintiff relies heavily on Eugenia Turner's affidavit to support her assertion that she was not a borrowed employee of UMC. The defendant filed a Motion to Strike the affidavit from the record on the grounds that it was submitted to the court for the first time on appeal. The record shows that the affidavit was executed on December 12, 2008—more than seven months after the hearing was conducted on the motion for summary judgment. Louisiana Code of Civil Procedure article 2132 provides:

> A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.

The plaintiff does not seek to correct any "misstatements, irregularities or informalities" in the trial record. *Id.* Instead, she attached to her brief a deposition

16

taken after the hearing on the motion for summary judgment. As stated in *State ex rel. Sabine River Auth. v. Meyer & Assocs. Inc.*, 07-214, p. 3 (La.App. 3 Cir. 10/3/07), 967 So.2d 585, 588, "an appellate court is not vested with the right to hear new evidence not part of the record in the trial court." *See White v. W. Carroll Hosp., Inc.*, 613 So.2d 150 (La.1992). Thus, the affidavit of Eugenia Turner has not been considered in this review. Also, we note that the defendant's motion to strike includes "all reference to Plaintiff as 'unrepresented' or a 'pro se plaintiff' be stricken from Appellant's appeal brief[.]" As discussed above, we find that the waiver executed by the plaintiff's counsel at the hearing on the second motion for summary judgment precludes any characterization of the plaintiff as unrepresented. Accordingly, the motion to strike is granted.

## DECREE

For the foregoing reasons, the grant of summary judgment in favor of UMC is affirmed. Furthermore, the affidavit of Eugenia Turner is stricken from the appellate record. All costs of these proceedings are assigned to the plaintiff, Eva Bankston.

**AFFIRMED; MOTION TO STRIKE GRANTED.**